IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNADETTE VAN SISE<br>23 Blaise Court<br>Staten Island, NY 10308<br><br>and<br><br>DOUGLAS VAN SISE<br>23 Blaise Court<br>Staten Island, NY 10308<br><br>           Plaintiffs,<br><br>v.<br><br>PEDDLER'S VILLAGE INC., a/k/a<br>PEDDLERS VILLAGE PARTNERSHIP,<br>a/k/a PEDDLERS VILLAGE OF<br>LAHASKA, INC.<br>90 East State Street<br>Doylestown, PA 18901<br><br>and<br><br>THE MOLE HOLE OF NEWTOWN, INC.<br>Village at Newtown<br>2831 South Eagle Road<br>Newtown, PA 18940<br><br>           Defendants. | CIVIL ACTION<br><br>NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Bernadette Van Sise and her husband, Douglas Van Sise ("Plaintiffs"), by and through their attorney, Michael T. van der Veen, hereby bring this Complaint against Defendant, Peddler's Village Inc. and Defendant, The Mole Hole of Newtown, Inc. ("Defendants") and avers as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship jurisdiction) as the parties are completely diverse in citizenship and the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. This Court has supplemental jurisdiction over Plaintiffs' state law claim of loss of consortium made herein pursuant to 28 U.S.C. § 1367, as the claim is so related to claims in the action within such original jurisdiction of this Court that they form part of the same case or controversy.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that both Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PARTIES

4. Plaintiff, Bernadette Van Sise, is an adult individual who at all times relevant hereto lived at 23 Blaise Court, Staten Island, New York 10308.

5. Plaintiff, Douglas Van Sise, is an adult individual who at all times relevant hereto lived at 23 Blaise Court, Staten Island, New York 10308 and is the lawful husband of Plaintiff, Bernadette Van Sise.

6. Defendant, Peddler's Village Inc., also known as Peddler's Village Partnership, also known as Peddlers Village of Lahaska, Inc. (herein after "Peddler's Village"), is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 90 East State Street, Doylestown, Pennsylvania 18901.

7. Defendant, The Mole Hole of Newtown, Inc. (herein after "The Mole Hole") is a corporation organized under the laws of Commonwealth of Pennsylvania with its principal place of business located at Peddler's Village, Routes 202 & 263, Lahaska, Pennsylvania 18931 and has its registered address at 2831 South Eagle Road, Newtown, Pennsylvania 18940.

## FACTUAL BACKGROUND

8. Plaintiffs incorporate by reference thereto Paragraphs 1 through 7 inclusive, as though same were set forth herein at length.

9. On or about December 8, 2013, Plaintiff Bernadette Van Sise was holiday shopping with a group of family members, all of whom had traveled from the New York area, in Peddler's Village, a shopping center located in Lahaska, Bucks County, Pennsylvania.

10. Peddler's Village owns and operates the shopping center referred to in Paragraph 9, and provides leased shopping units, hotel accommodations and outdoor festivals for the general public.

11. The Peddler's Village shopping units are constructed in a hilly village type setting creating a picturesque outdoor mall, with access to the shopping units from public walkways maintained by Peddlers Village. The Mole Hole is one such shopping unit.

12. In addition to the shopping units, Peddler's Village maintains architectural features on the property including, but not limited to a water wheel, a pond, a village green, a windmill, a gazebo and numerous and varied seating areas to attract and encourage business invitees to walk around the village and thereby creating foot traffic for Peddler's Village's commercial tenants.

13. The Peddler's Village is decorated for holidays, especially during the Christmas season. Patrons are encouraged and expected to walk throughout the village and patronize the various shops.

14. During the holiday season and especially on weekends, including December 8, 2013 as a Sunday, there is a known (to the Defendants) high volume of pedestrian traffic on the premises of the Peddler's Village.

15. The shopping units and public amenities of the Peddler's Village are connected by brick walkways.

16. The brick walkways are constructed with bricks,not uniform in size, shape, and color, which are placed in and maintained in such a manner than there are spaces between the bricks. The design and/or placement of the walkway creates changes in elevation and sloping of the walkway, in part obscured by the color variance of the bricks.

17. The brick walkways are further constructed and have settled in such a manner that they contain uneven levels and sloping of the walkways, generally from the center of the walking downward to the outer edges of the walkways.

18. The Mole Hole leases one of the store units from Peddler's Village by maintaining a commercial lease.

19. The walkways in front of and leading to the entrance and exit of the Mole Hole are as described in Paragraphs 16 and 17 above.

20. Peddler's Village had exclusive care, custody and control of the of the common areas of the Peddler's Village shopping center, and as the lessor of shopping units to various retail shops, such as The Mole Hole, had the ability to control the care, custody and control of the various leased shopping units.

21. Peddler's Village Inc. is charged with the maintenance, upkeep, snow/ice accumulation prevention, remediation and removal, and repairs of all streets, sidewalks and storm drains in the Peddler's Village shopping center.

22. The Mole Hole, as a commercial entity, open to the public as business invitees, shared responsibility for maintenance, upkeep and snow/ice accumulation prevention, remediation and removal of the areas immediate in front of and adjacent to all entrances and exits of the store.

23. At all relevant times hereto, Plaintiffs were business invitees and members of the general public solicited and invited to enter and remain on Defendants' premises for purposes directly connected with the business dealings and economic benefit of Defendants.

24. On December 8, 2013 snow was forecasted to begin in the late morning and to continue throughout the afternoon.

25. In fact, the forecasted snow began at approximately noon and continued to fall for hours during the early afternoon and into the night.

26. The snow covered the walkway described above in Paragraphs 16 and 17, and the accumulation, taken together with the manner in which the walkway was constructed and maintained, created a hazardous condition, whereby the snow and ice that formed on the walkway caused obstructed uneven slippery levels on the walkway. The entire walkway covered, as it was, by the snow and ice had a hill and ridge change in elevation, creating a dangerous, defective and unsafe condition.

27. Despite the predicted snow and ice accumulation, the known construction and condition of the walkways in the Peddler's Village and in front of The Mole Hole, and the the actual and predictable high volume of pedestrian traffic, Defendants took no precautions such as

pretreating the unevenly constructed and maintained walkway to prevent accumulation of snow and ice on the walkway.

28. At approximately 2:30 p.m., after snow had been falling and ice accumulating on the Peddler's Village walkways for approximately 2-3 hours, while walking directly in front of the shopping unit leased to The Mole Hole, Plaintiff Bernadette Van Sise suddenly and without warning slipped on the uneven ice and snow covered walkway, causing her feet to go out from under her and fall backward, violently hitting her head on the brick walkway.

29. The fall caused Mrs. Van Sise to lose consciousness, and sustain severe and permanent injuries as described, *infra*.

30. Mr. Van Sise immediately came to the aid of his wife and called out for help.

31. A passerby, who was a trained EMT, came to the aid of Mrs. Van Sise, stabilized her head while his spouse obtained an orthopedic collar from their car, and ultimately placed same on Mrs. Van Sise.

32. Immediately after the fall, a 911 call was placed to obtain medical assistance for Mrs. Van Sise.

33. At least four (4) ambulances arrived at or near the Peddler's Village responding to other pedestrian injuries due to the snow and ice conditions. None of the four ambulances were responding to Mrs. Van Sise.

34. In all, over 25 minutes passed between the making of the 911 call until the arrival of an ambulance and EMT personnel to care for Mrs. Van Sise.

35. Mrs. Van Sise's violent fall was reported to Peddler's Village property management personnel, who dispatched an employee to the location. However, due to the poor maintenance of

the walkways and sidewalks on the premises, said employee also fell and was injured preventing him from render any assistance to Mrs. Van Sise.

36. Mrs. Van Sise regained consciousness and began suffering from a severe headache, nausea, confusion and agitation before and while she was transported to St. Mary's Hospital in Langhorne, PA. She was diagnosed with a concussion, and released to return to her home in Staten Island, N.Y.

37. Mrs. Van Sise was immediately seen and treated for neurological, post-concussion symptoms, and followed for post-concussive symptomology and treatment thereof.

38. Mrs. Van Sise's headaches, dizziness, confusion, sensitivity to light and sound, nervousness in social situations persisted for several months. In February of 2014, Mrs. Van Sise suffered several small seizures wherein (among other symptoms) she became confused, experienced severe head pain and numbness in her arm and hands. Medical testing confirmed a brain-bleed and Mrs. Van Sise was scheduled for neurosurgery to address her condition.

39. On March 5, 2014 Mrs. Van Sise suffered a more invasive and severe seizure, coupled with (among other symptoms) extreme head pain, numbness in her extremities and falling to the floor, whereupon she underwent emergency surgery to ameliorate the bleeding on her brain.

40. Since that surgery, Mrs. Van Sise has continued to suffer post-concussive symptoms including, but not limited to, a suspected traumatic brain injury, severe headaches, dizziness, sleeplessness, confusion, irritability, personality changes, light sensitivity, sound sensitivity and inability to socialize/engage in routine social interactions. Despite being compliant with all prescribed medical treatment, there has been no improvement in her symptoms, other than the ending of seizure activity with the evacuation of her brain bleed.

## COUNT I
## PLAINTIFF BERNADETTE VAN SISE
### V.
## DEFENDANTS PEDDLER'S VILLAGE INC. & THE MOLE HOLE INC.
### NEGLIGENCE

41. Plaintiffs incorporate by reference thereto Paragraphs 1 through 38, inclusive, as though the same were set forth herein at length.

42. The fall and injuries of Plaintiff Bernadette Van Sise described herein in this complaint, together with the damages set forth hereinafter, are the direct and proximate result of the negligent, careless and reckless manner in which Defendants, Peddler's Village and The Mole Hole, maintained the sidewalks and walkways as described herein.

43. The walkway in question on which Plaintiff fell and was rendered unconscious was real property under the care, custody and control of Defendants. Defendants had actual and/or constructive knowledge of said defective condition of the walkway and the dangerous condition in which they were allowed to exist at the time of Mrs. Van Sise's fall and injuries.

44. It was the duty of the Defendants to use ordinary care and diligence to keep and maintain said walkways in a condition that was reasonably safe for its intended use, free from all defects and conditions that would render it dangerous and unsafe or present an unreasonable risk of harm to the Plaintiff, including but limited to maintenance and repair of the walkways at the Peddler's Village to remove uneven spacing, changes in level and sloping.

45. It was the duty of the Defendants to exercise reasonable care to protect the Plaintiff, by inspection and other affirmative acts, from the danger of a reasonably foreseeable injury occurring from the reasonably foreseeable uses of the walkways located on its premises and given their condition, by pretreating those walkways with salt, or some other chemical agent, to avoid the occurrence of slippery and hazardous conditions. These conditions present on the walkways

made it more difficult for Plaintiff to avoid by the known and predictable high volume of pedestrian traffic on those walkways, thereby partially obscuring the dangerous condition of the walkways.

46. It was the duty of the Defendants to use reasonable care in the maintenance of the aforesaid walkway in a manner consistent and in conformity with the recognized standards of public thoroughfare maintenance and safety with particular regard to the nature of the walkway construction, and its wear, sinking and tilting.

47. It was the duty of the Defendants to have sufficient personnel and equipment available to properly inspect and maintain the aforesaid walkway in a condition reasonably safe for the Plaintiff and free from defects and conditions rendering it unsafe.

48. It was the duty of the Defendants to warn the Plaintiff of the aforesaid dangerous and unsafe conditions existing on and upon the walkway of its premises.

49. At the aforesaid date and place, the careless and negligent acts of Defendants consisted of the following:

    (a) Allowing a serious defect to exist upon its walkways;

    (b) Failing to properly inspect the walkway it owned and controlled;

    (c) Failing to properly maintain said walkway, i.e. ice and snow were allowed to accumulate on the walkway and freeze to create a dangerous condition thereon;

    (d) Failing to treat the walkway before predicted snow fall and ice accumulation with chemical agents to prevent the accumulation of snow and ice on the walkways constructed and maintained as described in Paragraph's 16 and 17 above thereby allowing the occurrence of an unsafe and hazardous public walkway.

(e) Failing to remove the ice and snow from the walkways on which the Plaintiff was caused to be injured;

(f) Failing to prevent accumulation and then remove snow and ice in a timely and reasonable fashion;

(g) Failing to properly warn the Plaintiff of said dangerous and defective condition on the walkway;

(h) Failing to take notice of the existence of the hazardous and dangerous condition;

(i) Failing to prepare for and prevent the creation of the dangerous and defective condition on the walkway in light of the forecasted snow and ice;

(j) Failing to maintain its walkways in a reasonably safe condition such that pedestrians, specifically the Plaintiff, would not be injured in the manner in which she was injured.

50. Due to the negligent actions and/or inactions of the Defendants, Plaintiff fell as a result of the dangerous and defective condition on the Defendants' walkway, thereby sustaining severe and debilitating personal injuries on or about her head, neck, back, shoulders, arms, legs, torso and extremities, severe shock to the nerves and nervous system, with serious personal injury including, but not limited to a subdural hematoma, brain bleeding and a traumatic brain injury, all or some of which injuries are or will prove to be of a permanent nature and character, whereby Plaintiff has suffered, is suffering and will for an indefinite time into the future suffer, all to Plaintiff's great detriment and loss.

51. As a further result of the negligence and carelessness of the Defendants, Plaintiff has incurred and in the future will incur expenses for the treatment of injuries, has been disabled and

in the future will be disabled and not able to perform usual functions and has been caused and in the future will be caused great pain and suffering.

52. As a further result of the negligence and carelessness of the Defendants, Plaintiff has been obligated to receive and undergo medical attention and care for the injuries, to incur various expenses for said care and may be obligated to continue to expend such sums and to incur such expenses for an indefinite period of time in the future.

53. As a further result of the negligence and carelessness of the Defendants, Plaintiff may suffer severe loss of income and earning capacity in the future.

54. As a further result of the negligence and carelessness of the Defendants, Plaintiff has been unable to attend to daily chores, duties and occupations and may be unable to do so for an indefinite time in the future.

55. As a direct result of the negligence and carelessness of the Defendants, Plaintiff has or may hereafter incur other financial expenses or losses to which she may otherwise be entitled to recover.

56. As a further result of the negligence and carelessness of the Defendants, Plaintiff has suffered physical pain, mental anguish, humiliation, inconveniences and loss of life's pleasures and may continue to suffer the same for an indefinite time in the future.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court:

    (A)    award Plaintiff, Bernadette Van Sise compensatory damages including but not limited to physical and emotional pain and suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, embarrassment, humiliation, depression, loss of reputation,

        loss of promotional opportunity, benefits, and other damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs;

    (B)    award reasonable costs and attorney's fees;

    (C)    award punitive damages;

    (D)    grant any other relief that this court deems just and proper under the circumstance.

### COUNT II
### PLAINTIFF DOUGLAS VAN SISE
### V.
### DEFENDANTS PEDDLER'S VILLAGE INC. & THE MOLE HOLE, INC.
### LOSS OF CONSORTIUM

57.    Plaintiffs incorporate by reference thereto Paragraphs 1 through 54, inclusive, as though the same were set forth herein at length.

58.    As a result of the aforesaid injured sustained by Plaintiff Bernadette Van Sise, Plaintiff Douglas Van Sise, as her lawful husband, has been and may in the future be deprived of the care, companionship, consortium and society of his wife, all of which will be to his great detriment and loss.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court:

    (A)    award Plaintiff compensatory damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs;

    (B)    award reasonable costs and attorney's fees;

    (C)    award punitive damages;

    (D)    grant any other relief that this court deems just and proper under the circumstance.

## JURY DEMAND

Plaintiff demands a trial a jury of 12 members.

Respectfully Submitted,

Date: 11/11/14

_____
Michael T. van der Veen
Attorney for Plaintiffs
Pennsylvania Bar No. 75616
The Law Offices of Michael T. van der Veen
1219 Spruce Street
Philadelphia, PA 19107
P: (215) 546-1000
F: (215) 546-8529
mtv@mtvlaw.com